OPINION OF THE COURT
Edward H. Lehner, J.
These proceedings, which are before the court on an agreed statement of facts, call for a determination of whether respondents who have since 1979 successfully defended suits to collect rent from them are now covered by article 7-C of the Multiple Dwelling Law and, if so, whether they can now be required to pay the past rent due.
Respondents entered into residential occupancy of the rear portion of the second floor of the four-story building at 968 Lexington Avenue in 1973. The space had, in contravention of the certificate of occupancy, been previously occupied for residential use.
Until July 27,1982 the certificate of occupancy called for commercial use of the second floor, while permitting residential use of the third and fourth floors, each of which *651 floors contained one unit. Thus three units in the building were occupied for residential purposes, only two of which were lawful until July 27, 1982.
In 1979 petitioner’s holdover proceeding to recover the subject space was dismissed by Judge Taylor because the building was found to be a de facto multiple dwelling and the petition did “not set forth a multiple dwelling registration number or contain an allegation that the landlord has filed a registration statement as required by section D2641.21 of the Administrative Code.” That determination was affirmed by the Appellate Term and leave to appeal to the Appellate Division was denied.
Respondents resided in the premises without paying rent from March, 1979 until February, 1983 when Judge Sinclair ordered that use and occupancy at the rate of $275 per month be paid “without prejudice to either side” until termination of this proceeding. Before the court is both a holdover and a nonpayment proceeding.
The first issue raised is whether the subject building is an interim multiple dwelling (IMD), wdiich is defined (subject to limitations not relevant here) in subdivision 1 of section 281 of the Multiple Dwelling Law as follows: “any building or structure or portion thereof located in a city of more than one million persons which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter; and (iii) on December first, nineteen hundred eighty-one was occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another.”
It is acknowledged that the building meets criteria (i) and (iii), the controversy relating solely to item (ii). Although a certificate of occupancy legalizing the residential use of the subject apartment had not been issued by the effective date of article 7-C (June 21,1982), but was issued on July 27, 1982, petitioner claims the building is not an IMD because the final report of inspection recommending the issuance of the certificate occurred on June 15, 1982, six days prior to such effective date. Although the Appel *652 late Term in Axelrod Co. v Duffin & French (NYLJ, Sept. 3, 1982, p 6, col 1) suggested referring issues of coverage to the loft board created under the article, since this is a pure question of law, there is no need for such reference.
The resolution of the question posed is determined by applying the definition as of the effective date of the statute. If a building qualifies and the landlord subsequently legalizes the occupancy (whether it be one month or a year later) the building nevertheless remains an IMD subject to the statute with its specified rights and remedies. There is no provision in the legislation deregulating an IMD if a building falls within the definition on the effective date. The intent of the Legislature in adopting this remedial emergency law was to correct problems of both landlords (in collecting rent) and tenants (in the right of possession and the delivery of essential services).
Regarding petitioner’s argument with respect to the June 15 inspection date, the court observes that it cannot assume that if an inspector recommends that a certificate be issued that the department of buildings automatically issues same without any other considerations. If article 7-C had not been adopted and this case came on for trial on June 22, the defense that caused Judge Taylor to dismiss the prior petition would still prevail in light of the lack of both a certificate of occupancy authorizing residential use of the subject premises and a multiple dwelling registration number.
In view of the foregoing, the court finds that the building involved herein is an IMD.
The parties have stipulated that in the event of such a finding, the holdover proceeding shall be dismissed and the court shall make a determination as to whether any back rent is owing under subdivision 1 of section 285 of the Multiple Dwelling Law, which provides as follows: “Owner protection. 1. Notwithstanding the provisions of section three hundred two or three hundred twenty-five of this chapter, the owner of an interim multiple dwelling may recover rent payable from residential occupants qualified for the protection of this article on or after April first, nineteen hundred eighty, and maintain an action or proceeding for possession of such premises for non-payment of *653 rent, provided that he is in compliance with this article.” Under the foregoing, petitioner claims rent from April, 1980 to January, 1983 (34 months) at $275 per month.
Respondents raise several arguments as to why the court should deny petitioner the rent requested. First, they assert that the issuance is res judicata by reason of .the affirmance of Judge Taylor’s decision. The problem with this argument is that all the prior cases determined was that by reason of section D26-41.21 of the Administrative Code of the City of New York, the proceeding could not be maintained due to the lack of a multiple dwelling registration number. No adjudication on the merits was rendered.
Next respondents claim that since the occupancy was illegal, under section 302 of the Multiple Dwelling Law, no rent was “payable” as that word is used in the above-quoted section. However, although rent may not have been recoverable prior to the enactment of section 285, the “[notwithstanding” language of the section is clearly intended to now permit the collection of rent that would be payable absent the provision of section 302. This is not improperly imposing a rent obligation that did not previously exist. The intent of the legislation was to remove the procedural impediment to rent recovery, provided a landlord complied with the other provisions of article 7-C, which have the end goal of bringing the illegally occupied lofts into compliance with health and safety standards.
Finally, respondents argue that the April 1,1980 date in the statute doesn’t define the date from which rent can be recovered, but rather defines the class of persons from whom rent can be recovered; to wit, “residential occupants qualified for the protection of this article on or after April 1, 1980.” The argument is irrational as there is nothing in the statute that qualifies a tenant for protection by a particular date. The article was clearly intended to extend the carrot of permitting a limited recovery of back rent from tenants who have been living rent free.
It is noted that respondents have not asserted a claim for rent abatement based on a breach of the warranty of habitability, although such a claim is available to loft tenants. See Silverstein v Roof Bin (NYLJ, Dec. 16,1982, p *654 7, cols 2, 3) where the Appellate Term (in dicta) said: “inasmuch as owners of interim multiple dwellings may maintain summary proceedings for nonpayment of rent payable on or after April 1, 1980 notwithstanding that such buildings lack residential certificates of occupancy * * * there is no reason why an abatement claim should not be cognizable at least from that date as well.”
Thus, petitioner is entitled to a final judgment of possession and a judgment for rent at $275 per month from April, 1980 to January, 1983, for a total of $9,350. Provided respondents continue paying rent on the first day of each month at the monthly rate of $275, issuance of the warrant of eviction will be stayed to September 30, 1983. In the event respondents fail to make such monthly payments, petitioner may move to accelerate the issuance date on five days’ notice.